**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Charles J. Dhyse<br><br>         Debtor | Chapter 13<br><br>Case No. 14-10869 |

**RESPONSE TO TRUSTEE'S OBJECTION TO**
**APPLICATION FOR FEES AND EXPENSES**

NOW COMES Molleur Law Office ("MLO"), counsel for the debtor in the above captioned Chapter 13 case, by and through his undersigned counsel, and responds to the Trustee's Objection to Application for Fees and Expenses (the "Objection") as follows:

### I.      *Responses to Allegations and Objections*

1.      MLO denies that a need exists to supplement or amend the First Application of Molleur Law Office for Compensation of Legal Services (the "Fee Application"). MLO admits the remaining allegations contained in Paragraph 1 of the Objection.

2.      MLO admits the legal standards set forth in Paragraph 2 of the Objection.

3.      MLO admits the legal standards set forth in Paragraph 3 of the Objection but, to the extent the Trustee attempts to apply those standards to vaguely referenced time entries, MLO denies the same.

4.      MLO denies that the either the Bankruptcy Code or the applicable Bankruptcy Rules require professionals to seek approval from a debtor prior to filing a fee application. Notwithstanding the foregoing, the Debtor was served with a copy of the fee application and chose not to file an objection. Moreover, the amount of fees and expenses incurred by MLO to

date were discussed generally with the Debtor.  The Debtor did not express any concern with the fees charged to date.

5.     MLO admits that the Trustee correctly states the terms of Debtor's plan in Paragraph 5 of the Objection.  The remaining allegations in Paragraph 5 of the Complaint are irrelevant MLO therefore denies the same.  The Fee Application merely seeks payment of allowed fees to the extent sufficient funds exist in the retainer and funds set aside under the plan for payment of attorney's fees and administrative expenses.

6.     MLO denies that the language contained in its form of order is deficient.  Furthermore, MLO denies that the case is administratively insolvent unless and until MLO actually seeks payment of administrative expenses in excess of the amounts set forth in the plan.

7.     MLO denies that internal communications regarding the case are disproportionate to the complexity of the matter.

8.     MLO denies that any inefficiency or duplication of time existed with respect to preparation of the Debtor's schedules and statements in light of the complexity of this matter.

9.     MLO admits that some duplicative entries likely exist.  MLO's customary and voluntary ten percent (10%) deduction in fees is designed to account for such duplication.

10.     MLO denies the allegations contained in Paragraph 10 of the objection.  The hearing to which the Trustee refers took place in Augusta, not Bangor and, accordingly, Court Call was not an available option.  Moreover, the motion filed by Mr. Recht sought relief from the automatic stay for the purpose of filing a declaratory judgment action in Maryland state court to determine whether the Trust which is central to this case constitutes a spendthrift trust.  This issue is of critical importance to the Debtor since the Trust constitutes his sole source of income, other than social security.  The undersigned attorney attended the hearing fully prepared to argue

in support of the Trustee's motion.   While waiting for the hearing to commence, counsel

determined in a discussion with Mr. Recht's counsel that all of her arguments would be

presented.  Due to the lack of space in the Augusta courtroom, and the heavy attendance during

hearings that day, undersigned counsel decided not to enter an appearance unless oral argument

became necessary.  Due to the importance of the motion, the lack of Court Call availability and

the procedural difficulty this case presents, counsel's fees should be allowed in full.

11.     MLO admits the allegations contained in Paragraph 11 of the Fee Application

Objection.

12.     Trustee raises the objection appearing in Paragraph 12 of this Objection and MLO

consistently responds that this objection is without merit.  Should the Court determine that the

fees identified in Paragraph 12 should be disallowed, MLO contends that the voluntary reduction

is sufficient to account for these fees.

13.     MLO denies the allegations contained in Paragraph 13 of the Objection.  The

Trustee's only meritorious objections are those relating to duplicative entries (Paragraph 9), an

erroneous assigned entry (Paragraph 11), clerical entries (Paragraph 12)  and travel expenses

(Paragraph 14) totaling $309 in fees and $13.20 in expenses.  Since these amounts are more than

accounted for by MLO's voluntary discount in the amount of $2,093.20.

14.     MLO admits the allegations contained in the first Paragraph 14 of the Objection.

MLO objects to the second Paragraph 14 to the extent the Trustee argues additional fees beyond

the voluntary discount should be disallowed.

15.     MLO does not disagree with Paragraph 15 of the Objection.

## II.     *Additional Factual Background*

16.     This case arises primarily out of pre-petition litigation commenced by John M. Powell and Kathleen M. Powell.  The issue began with a fraudulent transfer action commenced by the Powells in Waldo County Superior Court (the "State Court") on or about October 10, 2012 seeking to void certain transfers by the Debtor to, *inter alia*, Temple Heights, LLC, Alan Tetervin and certain recipients of easement rights (the "State Court Litigation").

17.     Very little progress had been made in establishing the merits of the Powells' alleged fraudulent transfer claims by the time the Debtor filed his chapter 13 case on November 6, 2014, however, the litigation had proven costly as result of discovery and a battle over the Debtors' right to receive distributions from the Charles Dhyse Spendthrift Trust (the "Trust") during the pendency of the litigation.

18.     Remarkably, the State Court ultimately froze the Trust's accounts pending the outcome of the State Court Litigation even thought those accounts were owned by a spendthrift trust and contained funds far exceeding the $114,458.17 judgment awarded to the Powells on or about August 24, 2009  as the result of a collection action.

19.     Other than social security, the Trust is the Debtor's sole source of income.  Once the Trust's accounts were frozen, the Debtor became incapable of paying his everyday expenses and funding his defense against the State Court Litigation.  The Debtor filed this bankruptcy case when bills began to accrue.

20.     As expected, the filing sparked a flurry of activity including: (1) a motion by the Debtor seeking a determination that the order freezing the Trust's accounts constituted a violation of the automatic stay or, in the alternative, was void due to the Trust's character as a spendthrift trust; (2) a motion by Mr. Recht seeking relief from the automatic stay for the purpose of determining whether the Trust constitutes a spendthrift trust; (3) a complaint against

nondischargeability filed by the Powells; (4) objections to confirmation by the chapter 13 Trustee and the Powells; (5) a motion by the Powells seeking relief from the automatic stay for the purpose of removing the State Court Litigation to the Bankruptcy Court; (6) a Court order directing the Debtor, Mr. Recht, the chapter 13 Trustee and the Powells to file a memorandum on the issues of standing and statute of limitations with respect to the State Court Litigation; and (7) a complaint by Mr. Recht seeking declaratory judgment on the spendthrift trust issue.

21.     Currently pending before this Court is plan confirmation, two adversary proceedings and a motion for relief from stay which may result in a third adversary proceeding.

22.     Although there are not many creditors in this case, the issues before this Court are both unique and complex and have impacted every step of this case; from preparing the Debtor's schedules, statements and chapter 13 plan to determine the procedure for moving this case forward.

23.     In light of these complexities, MLO's internal discussions regarding both strategic and procedural decisions are not only justified, but necessary. In fact, the procedural issues alone have proven challenging even to the Court.  However, this is also a case in which more detail regarding these internal discussions would likely have prejudiced the debtor due to the attorney client privilege.

24.     Due to the challenges presented by this case, MLO assets that: (1) the amount of fees sought by MLO is reasonable; and (2) that the time records filed in support of the Fee Application are sufficiently detailed.

WHEREFORE, the Debtor respectfully requests that the Court overrule the Objection and grant such other relief as this Court deems necessary and appropriate.

Dated:  May 11, 2015                    MOLLEUR LAW OFFICE

                                        By:*/s/ Jessica A. Lewis*
                                        Jessica A. Lewis, Esq.
                                        Attorney for Debtor
                                        MOLLEUR LAW OFFICE
                                        419 Alfred Street
                                        Biddeford, ME  04005
                                        207-283-3777
                                        jessica@molleurlaw.com